FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2023

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ENRIQUE C.,[1] | No. 1:22-cv-03040-MKD |
| Plaintiff, | |
| | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 13, 14 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 13, and denies Defendant's motion, ECF No. 14.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## SEQUENTIAL EVALUATION PROCESS

After a child has been found to be entitled to disability benefits, the Commissioner is required to redetermine whether the claimant continues to be entitled to benefits once they reach the age of 18. 20 C.F.R. § 416.987. The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability has ended. 20 C.F.R. § 416.994(b)(5). This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement from the point of the finding of disability (the comparison point decision) through the redetermination decision. *Compare* 20 C.F.R. § 416.920 *with* § 416.994(b)(5). However, when a child's eligibility for benefits is redetermined under the adult criteria when the child reaches age 18, the ALJ must consider the redetermination under the rules that apply to an adult's new application, 20 C.F.R. § 416.920, not the criteria set forth in 20 C.F.R. § 416.994. 20 C.F.R. § 416.987(b). A claimant is disabled only

1  if her impairment is "of such severity that [s]he is not only unable to do his [or her]

2  previous work[,] but cannot, considering his [or her] age, education, and work

3  experience, engage in any other kind of substantial gainful work which exists in

4  the national economy."  42 U.S.C. § 1382c(a)(3)(B).

5      The Commissioner has established a five-step sequential analysis to

6  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

7  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

8  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

9  gainful activity," the Commissioner must find that the claimant is not disabled.  20

10  C.F.R. § 416.920(b).

11      If the claimant is not engaged in substantial gainful activity, the analysis

12  proceeds to step two.  At this step, the Commissioner considers the severity of the

13  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

14  "any impairment or combination of impairments which significantly limits [his or

15  her] physical or mental ability to do basic work activities," the analysis proceeds to

16  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

17  this severity threshold, however, the Commissioner must find that the claimant is

18  not disabled.  *Id.*

19      At step three, the Commissioner compares the claimant's impairment to

20  severe impairments recognized by the Commissioner to be so severe as to preclude

1  a person from engaging in substantial gainful activity.  20 C.F.R. §

2  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

3  enumerated impairments, the Commissioner must find the claimant disabled and

4  award benefits.  20 C.F.R. § 416.920(d).

5  If the severity of the claimant's impairment does not meet or exceed the

6  severity of the enumerated impairments, the Commissioner must pause to assess

7  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

8  defined generally as the claimant's ability to perform physical and mental work

9  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

10  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

11  At step four, the Commissioner considers whether, in view of the claimant's

12  RFC, the claimant is capable of performing work that he or she has performed in

13  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

14  capable of performing past relevant work, the Commissioner must find that the

15  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

16  performing such work, the analysis proceeds to step five.

17  At step five, the Commissioner considers whether, in view of the claimant's

18  RFC, the claimant is capable of performing other work in the national economy.

19  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

20  must also consider vocational factors such as the claimant's age, education and

ORDER - 5

past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff was found disabled under the childhood disability standards, with an onset date of February 3, 2014.[2] Tr. 74. On June 4, 2015, Plaintiff was notified he no longer qualified for benefits as of June 5, 2015, and his benefits were terminated on August 31, 2015. Tr. 74-75. Plaintiff appealed the cessation and appeared for a hearing with a hearing officer on March 17, 2016. Tr. 104-15. The

--------------------

[2] Plaintiff's disabled child file was lost, therefore additional details regarding his approval for childhood benefits are not available in the record. Tr. 462, 471.

ORDER - 6

hearing officer affirmed the cessation of benefits.  Tr. 116-24.  Plaintiff appealed

the denial, and an administrative law judge (ALJ) held a hearing on May 2, 2017.

Tr. 38-45.  The hearing was continued to allow Plaintiff to obtain representation

and to schedule an interpreter for the hearing.  *Id.*  On April 11, 2019, Plaintiff

appeared for a hearing.  Tr. 46-73.  On May 1, 2019, the ALJ denied Plaintiff's

claim.  Tr. 15-37.  Plaintiff appealed the denial, resulting in a remand.  Tr. 892-94.

On December 21, 2021, Plaintiff appeared for a remand hearing.  Tr. 844-60.  On

January 12, 2022, the ALJ again denied Plaintiff's claim.  Tr. 812-43.

     The ALJ did not make a finding as to whether Plaintiff has engaged in

substantial gainful activity as it is not relevant in age-18 disability

redeterminations.  *See* 20 C.F.R. § 416.987.  At step two, the ALJ found that since

June 4, 2015, Plaintiff has had the following severe impairment: hearing loss,

headaches, learning disability, neurodevelopmental disorder, and intellectual

disability.  Tr. 820.  The ALJ found that since June 4, 2015, Plaintiff has not had

an impairment or combination of impairments that meets or medically equals the

severity of a listed impairment.  Tr. 821.

     At step three, the ALJ found that since June 4, 2015, Plaintiff has had the

RFC to perform a full range of work at all exertional levels with the following

nonexertional limitations:

> [Plaintiff] is capable of understanding, remembering, and performing
> simple routine tasks; he must avoid exposure to moving machinery

ORDER - 7

1
2
and other hazards; he is able to perform work with written instructions
or one-to-one verbal, face to face instructions, in a work environment
with no more than a moderate noise [level].

3 Tr. 823.

4    The ALJ found Plaintiff has no past relevant work.  Tr. 833.  At the last step,

5 the ALJ found that, considering Plaintiff's age, education, work experience, RFC,

6 and testimony from the vocational expert, there were jobs that existed in significant

7 numbers in the national economy that Plaintiff could perform, such as laundry

8 worker, bus person, and janitor.  Tr. 834.  Therefore, the ALJ concluded Plaintiff's

9 disability ended on June 4, 2015, and Plaintiff has not become disabled again since

10 that date.  Tr. 835.

11    Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior

12 remand became the Commissioner's final decision for purposes of judicial review.

13                                          **ISSUES**

14    Plaintiff seeks judicial review of the Commissioner's final decision denying

15 him supplemental security income benefits under Title XVI of the Social Security

16 Act.  Plaintiff raises the following issues for review:

17       1.  Whether the ALJ properly evaluated the opinion evidence;

18       2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

19       3.  Whether the ALJ conducted a proper step-five analysis.

20 ECF No. 13 at 2.

ORDER - 8

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of Sheila Kredit, M.D., and Roland Dougherty, Ph.D.  ECF No. 13 at 15-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

ORDER - 9

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Kredit

On December 1, 2021, Dr. Kredit, a treating doctor, rendered an opinion on Plaintiff's functioning. Tr. 1124-25. Dr. Kredit diagnosed Plaintiff with migraine headaches, ocular migraines, bilateral hearing loss, and congenital bilateral ear deformity. Tr. 1124. Dr. Kredit stated Plaintiff's recurrent migraines cause pain; working on a regular and continuous basis would potentially cause Plaintiff's condition to deteriorate as exposure to very loud noises could worsen his deafness and he is at high risk of injury/accidents due to his deafness; he would miss four or more days of work per month due to communication errors or due to accidents on the job; and Plaintiff has a significant hearing impairment that would take extensive rehabilitation/training to become more functional in a work environment. Tr. 1124-25. Dr. Kredit also explained that Plaintiff's hearing impairment had

ORDER - 10

likely caused him to have areas of knowledge that were less informed and would

make it more difficult for him to follow directions in a new job.  Tr. 1129.  Dr.

Kredit also opined Plaintiff has mild limitations in his ability to remember

locations and work-like procedures, carry out very short simple instructions,

perform activities within a schedule, maintain regular attendance and be punctual

within customary tolerances, work in coordination with or proximity to others

without being distracted by them, accept instructions and respond appropriately to

criticism from supervisors, respond appropriately to changes in the work setting,

and travel to unfamiliar places or use public transportation; moderate limitations in

his ability to understand and remember very short and simple instructions, sustain

an ordinary routine without special supervision, interact appropriately with the

general public, and ask simple questions or request assistance; and marked

limitations in his ability to understand and remember detailed instructions, carry

out detailed instructions, and be aware of normal hazards and take appropriate

precautions; and he has no limitations in the remaining areas of functioning.  Tr.

1137-38.  Dr. Kredit explained the limitations were due to Plaintiff's hearing

impairment and represent how his inability to hear all words said to him impact his

ability to work.  Tr. 1139.  The ALJ gave Dr. Kredit's opinion little weight.  Tr.

830.  As Dr. Kredit's opinion was contradicted by the opinions of Dr. Hander, Tr.

465-71, and Dr. Virji, Tr. 488, the ALJ was required to give specific and legitimate

ORDER - 11

1    reasons, supposed by substantial evidence, to reject Dr. Kredit's opinion.  *See*

2    *Bayliss*, 427 F.3d at 1216.

3        The ALJ found Dr. Kredit's opinion was not supported by the longitudinal

4    record.  Tr. 830.  An ALJ may discredit physicians' opinions that are unsupported

5    by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

6    1195 (9th Cir. 2004).  Moreover, the extent to which a medical source is "familiar

7    with the other information in [the claimant's] case record" is relevant in assessing

8    the weight of that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  The

9    ALJ stated that while Dr. Kredit is a treating provider who has had an opportunity

10   to examine Plaintiff and presumably is familiar with the longitudinal record, her

11   opinion is out of proportion with the longitudinal record.  Tr. 830.

12       Dr. Kredit's opinion is largely based on Plaintiff's hearing impairment, and

13   she explicitly stated multiple portions of her opinion pertain to Plaintiff's deafness.

14   Tr. 1124-25, 1139.  The ALJ's discussion of mental status examinations fails to

15   demonstrate any inconsistencies with Dr. Kredit's opinion based on Plaintiff's

16   hearing impairment.  *See* Tr. 830.  Similarly, the ALJ's discussion of normal

17   physical examination findings, including normal heart and lungs, gait, and

18   extremity examinations, fails to demonstrate any inconsistencies between Dr.

19   Kredit's opinion and the longitudinal record.  *See* Tr. 830-31.

20

Next, the ALJ notes Plaintiff had congenital ear abnormalities with hearing loss but he has inconsistently used his hearing aids and his frequency modulated (FM) device.  Tr. 830.  Plaintiff explained at the 2021 hearing that he was not wearing a hearing aid, and that the one he previously wore was his "high school hearing aid," and it no longer works.  Tr. 853.  Plaintiff also reported his hearing aids were uncomfortable and made him feel self-conscious.  Tr. 643, 852-53.  The FM system was set up by Plaintiff's school, Tr. 362, and there is no evidence in the record that Plaintiff possessed everything needed for the system nor that he had the ability to set the system up in a setting outside of his school, ECF No. 13 at 11.

The ALJ also found Plaintiff did not pursue the surgery recommended for his hearing impairment, Tr. 826, however the record documents some attempts to follow-up on the surgery.  Plaintiff and his mother visited an ENT, Dr. Gross, in April 2017, and Plaintiff stated he wanted to talk about surgery.  Tr. 535.  Plaintiff was previously referred to Seattle for a corrective repair in 2015, Tr. 369, 372, 535, but Plaintiff was unable to go to Seattle due to problems with transportation, Tr. 65, 535.  Dr. Gross provided a new surgery referral in April 2017.  Tr. 535.  Plaintiff visited Dr. Heer in May 2017 requesting a referral to Yakima Hearing and Speech, but Plaintiff and his mother were encouraged to call Dr. Gross to follow up on the referral.  Tr. 530.  In January 2019, Mr. Curtis wrote the surgery was "not performed due to other circumstances."  Tr. 527.  Plaintiff testified in 2019

1  that his audiologist stated she did not recommend surgery.  Tr. 55.  Based on the

2  testimony and medical records, it appears Plaintiff did follow-up on the surgery

3  referrals over the years but at first was unable to receive the surgery due to a lack

4  of transportation and later surgery ultimately may not have been recommended.

5       Next, the ALJ stated the examinations documented normal orientation,

6  alertness, speech, and listening.  Tr. 830.  The ALJ offers no explanation as to how

7  orientation nor alertness pertain to Plaintiff's hearing impairment.  Earlier in the

8  decision, the ALJ offered numerous citations to records documenting Plaintiff

9  being alert, oriented, and in no acute distress; these findings have no bearing on

10  Plaintiff's hearing impairment.  Tr. 826-29.  In 2013, an evaluation noted Plaintiff

11  could hear only 10 percent of speech at a distance of three feet, and stated Plaintiff

12  will "experience significantly more difficulty hearing at a distance."  Tr. 358.  The

13  evaluator noted Plaintiff "required a significantly greater duration of time than

14  peers his age to process information and complete tasks than his same aged peers."

15  Tr. 360.  Examinations have documented ongoing hearing impairment, with

16  impaired word recognition, poor verbal comprehension, and tangential responses.

17  Tr. 355, 441-43, 556-57, 567.  Plaintiff has had difficulties understanding

18  questions, required repetition of questions, and answered questions with non-

19  responsive answers on multiple occasions.  Tr. 41, 55-56, 114, 384, 441-44, 527,

20  600-01, 606.

ORDER - 14

1    Lastly, the ALJ noted Plaintiff engaged in team sports.  Tr. 830.  The record

2    indicates Plaintiff engaged in sports with friends, and there is no documentation of

3    the frequency or extent of Plaintiff's participation, nor whether Plaintiff had any

4    accommodations to participate.  *See, e.g.,* Tr. 414, 502, 599.  Plaintiff's sister noted

5    Plaintiff's ability to engage in sports but stated Plaintiff generally requires others to

6    speak loudly and slowly, and needs repetition, to be able to understand others.  Tr.

7    1104.

8    Defendant contends Plaintiff's ability to work is also inconsistent with Dr.

9    Kredit's opinion.  ECF No. 14 at 11.  Plaintiff reported he had started the job only

10   three weeks prior, he was working part-time, and stated his family helped him

11   obtain the job.  Tr. 850, 852.  Plaintiff reported his supervisor "talks to me slow,"

12   and he writes things down for him to read.  Tr. 853.  Plaintiff's prior work was

13   picking fruit with his brother.  Tr. 854.

14   The ALJ's finding that Dr. Kredit's opinion is inconsistent with the

15   longitudinal record is not supported by substantial evidence.  As such, the ALJ

16   erred in rejecting the opinion without setting forth specific and legitimate reasons,

17   supported by substantial evidence.  On remand, the ALJ is instructed to reconsider

18   Dr. Kredit's opinion and incorporate the opinion into the RFC or give specific and

19   legitimate reasons to reject the opinion.

20

ORDER - 15

1

*2. Dr. Dougherty*

On June 6, 2015, Dr. Dougherty, a consultative examiner, conducted a

psychological examination and rendered an opinion on Plaintiff's functioning.  Tr.

440-49.  Dr. Dougherty diagnosed Plaintiff with borderline intellectual functioning

and probable verbal learning disorder.  Tr. 443.  He opined Plaintiff's verbal

comprehension is poor; his retention of verbal information is likely to be somewhat

poor; he is likely to have significant difficulties in the area of abstract thinking; he

is likely to have significant problems in verbal comprehension; he is likely to do

much better on nonverbal than verbal tasks; he has some difficulties with working

memory; he is not capable of managing his own funds prudently; his social skills

appear good; he has the ability to perform detailed and complex tasks; he should

have no difficulty maintaining regular attendance in the workplace or in

completing a normal workday/workweek without interruptions from a psychiatric

condition "other than his probable verbal learning disability which may require

some accommodation in the workplace"; and he should be able to deal with the

stress encountered in the workplace.  Tr. 443-44.  The ALJ gave Dr. Dougherty's

opinion some weight.  Tr. 829.  As Dr. Dougherty's opinion was contradicted by

the opinions of Dr. Brown, Tr. 472-74, and Dr. Clifford, Tr. 416, the ALJ was

ORDER - 16

required to give specific and legitimate reasons, supposed by substantial evidence, to reject Dr. Dougherty's opinion. *See Bayliss*, 427 F.3d at 1216.

The ALJ stated Dr. Dougherty's opinion was somewhat consistent with the longitudinal record but found that to the extent the opinion "suggests greater limitations than those accommodated by the residual functional capacity, it is out of proportion to the longitudinal record (see finding #4)." Tr. 829. An ALJ may reject limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. The specific and legitimate reason standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (conclusory reasons do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). The ALJ did not provide any explanation as to which portions of the opinion were

ORDER - 17

1  allegedly inconsistent with the record, nor which portions of the record the opinion

2  is inconsistent with.  As discussed *supra,* the ALJ's analysis of the record under

3  "finding 4" was flawed and largely focuses on irrelevant evidence in the record.

4  As such, the Court cannot meaningfully review the ALJ's analysis of Dr.

5  Dougherty's opinion.

6         The ALJ erred in failing to provide specific and legitimate reasons,

7  supported by substantial evidence, to reject Dr. Dougherty's opinion.  On remand,

8  the ALJ is instructed to reconsider Dr. Dougherty's opinion and incorporate the

9  opinion into the RFC or give specific and legitimate reasons to reject the opinion.

10  **B.  Plaintiff's Symptom Claims**

11         Plaintiff faults the ALJ for failing to rely on reasons that were clear and

12  convincing in discrediting his symptom claims.  ECF No. 13 at 4-15.  An ALJ

13  engages in a two-step analysis to determine whether to discount a claimant's

14  testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

15  "First, the ALJ must determine whether there is objective medical evidence of an

16  underlying impairment which could reasonably be expected to produce the pain or

17  other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

18  "The claimant is not required to show that [the claimant's] impairment could

19  reasonably be expected to cause the severity of the symptom [the claimant] has

20

alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has

ORDER - 19

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 824.

The ALJ's evaluation of Plaintiff's symptom claims and the resulting

limitations relies almost entirely on the ALJ's assessment of the medical evidence.

Having determined a remand is necessary to readdress the medical source

opinions, any reevaluation must necessarily entail a reassessment of Plaintiff's

subjective symptom claims.  Thus, the Court need not reach this issue and on

remand the ALJ must also carefully reevaluate Plaintiff's symptom claims in the

context of the entire record.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

2012) ("Because we remand the case to the ALJ for the reasons stated, we decline

to reach [plaintiff's] alternative ground for remand.").

ORDER - 20

For the purposes of the remand, the Court notes that the ALJ found Plaintiff's ability to engage in "at least limited work activity" at a restaurant is inconsistent with his allegations. Tr. 825. However, the ALJ did not address accommodations he receives, as Plaintiff reports that his supervisor speaks slowly to him and writes instructions down for him to follow. Tr. 853. The ALJ also found Plaintiff's ability to engage in sports and obtain a license and food handlers permit is inconsistent with his allegations, but Plaintiff was not asked if the individuals he plays sports with help accommodate his disabilities, nor if he received any accommodations when taking his driving test or food handler's test. On remand, the ALJ is instructed to develop the record as to whether Plaintiff has received accommodations in his activities of daily living.

**C. Step Five**

Plaintiff contends the ALJ erred at step five by failing to reconcile inconsistencies between the vocational expert's testimony and the DOT. ECF No. 13 at 20-21. "[W]hen there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the inconsistency." *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (citing *Zavalin v. Colvin,* 778 F.3d 842, 846 (9th Cir. 2015)). As the case is being remanded for the reasons discussed *supra*, the ALJ is also instructed to perform the

ORDER - 21

five-step analysis anew, including performing a new step five analysis and calling

a vocational expert for testimony.

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits.

ECF No. 14 at 10-11.

"The decision whether to remand a case for additional evidence, or simply to

award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041,

1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security

cases, the Ninth Circuit has "stated or implied that it would be an abuse of

discretion for a district court not to remand for an award of benefits" when three

conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the

credit-as-true rule, where (1) the record has been fully developed and further

administrative proceedings would serve no useful purpose; (2) the ALJ has failed

to provide legally sufficient reasons for rejecting evidence, whether claimant

ORDER - 22

testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The Court finds further proceedings are necessary. There are multiple conflicting medical opinions, requiring resolution by the ALJ. Further, Plaintiff was working part-time at the time of the 2021 hearing. Tr. 851. Plaintiff was not asked the number of hours he was working; thus, it is unclear if he was working at a substantial gainful activity level. If he was working at a substantial gainful activity level, the ALJ is instructed to determine if the work was an unsuccessful work attempt, and whether the work was performed under special conditions that brought the value of Plaintiff's work to a level under the substantial gainful activity threshold. *See* POMS DI 10505.010; POMS DI 10501.001; POMS DI 11010.145. On remand, the ALJ is instructed to develop the record as to Plaintiff's work in 2021.

On remand, the ALJ is also instructed to consider whether medical and/or psychological expert testimony is necessary to help determine if Plaintiff's

impairments meet or equal a listing and to determine his RFC.  Multiple providers,

Plaintiff, and Plaintiff's family members, all discussed Plaintiff needing special

training and/or accommodations to be able to engage in academic, work-related,

and social activities.  Requiring special conditions to work may show that an

individual does not have the skills and ability to work at the substantial gainful

activity level.  *See* 20 C.F.R. § 416.973(c).  The ALJ should consider whether an

expert's testimony would be beneficial in determining if Plaintiff requires special

conditions in order to work.  As such, the case is remanded for further proceedings

consistent with this Order.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is not supported by substantial evidence and is not free of harmful

legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13** is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

REVERSING and REMANDING the matter to the Commissioner of Social

Security for further proceedings consistent with this recommendation pursuant to

sentence four of 42 U.S.C. § 405(g).

ORDER - 24

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 31, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 25